IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RODERICK L. MILES, )
)
         Plaintiff, )
)
v. ) 1:21CV321
)
KILOLO KIJAKAZI, )
Acting Commissioner of Social Security,[1] )
)
         Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

On May 25, 2012, Plaintiff Roderick L. Miles ("Plaintiff") filed his most recent claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). (Tr. at 352-57.)[2] After a lengthy administrative process, the administrative law judge ("ALJ") found Plaintiff disabled under the Act. Because SSI is payable beginning the month after that in which the application is filed, see 20 C.F.R. § 416.445, the favorable decision entitled Plaintiff to back benefits from June 2012 through December 2020, the month of the ALJ's decision. (Tr. at 1173-85.)

On February 23, 2021, the Social Security Administration ("SSA") sent Plaintiff a Notice of Award ("Notice") [Doc. #20-2] explaining that he was owed a total of $51,804.26

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #11].

in back benefits for June 2012 through December 2020, as well as ongoing monthly benefits of $529.23 per month. The Notice further explained that $6000 would be withheld from the back benefits by the agency for attorney's fees and that the remaining $45,804.26 would be distributed to Plaintiff in installment payments. The Notice further stated that Plaintiff's payments for January and February 2021, amounting to $1058.68, had already been released and that Plaintiff should begin receiving regular monthly payments of $529.34 in March 2021. (Notice [Doc. #20-2 at 1].) It also stated that Plaintiff would receive his "first installment payment of $2,3082.00 by March 15, 2021." (Notice [Doc. #20-2 at 7].)[3] In his Complaint before this Court [Doc. #2], dated April 21, 2021, Plaintiff claims that he has yet to receive any payments or written notices from the SSA.[4] In Plaintiff's subsequent filings, he does not contend that he has still not received the monthly payments or installment payments, but he contends that his benefits should be paid back through 2005, and he seeks relief in the form of money damages of $3.3 million. (Mot. For Sum. J. [Doc. #15].)

---

[3] That February 2021 Notice provided instructions for pursuing an administrative appeal as to any of the matters set out in the Notice, but Plaintiff did not pursue an administrative appeal and instead filed the present suit. (Notice [Doc. #20-2 at 3-4].)

[4] Notably, Plaintiff includes as an attachment to his Complaint a letter from the SSA dated January 14, 2021. This letter explains, in pertinent part that "YOUR CASE WAS MEDICALLY APPROVED AT THE HEARING LEVEL. WE NEED TO REVIEW YOUR INCOME AND RESOURCES TO DETERMINE IF YOU ARE ELIGIBLE FOR SSI PAYMENTS. PLEASE CALL OUR OFFICE AS SOON AS POSSIBLE." (Comp. at 12) (capitalization in original). Additional letters to Plaintiff from the SSA regarding SSI benefits explain that claimants "cannot get SSI if the resources [the agency] count[s] have a value of more than $2000." (See, e.g., Letter [Doc. #20-3 at 1], Notice [Doc. #20-2 at 7].) These letters further explain that "SSI payments may change if your situation changes," and that claimants are required to promptly report changes including any bank account balance over $2000.00 (exclusive of SSI payments made in the last 9 months), and changes to their household makeup, location, and/or resources, medical condition, work situation, or bank information. (See Letter [Doc. #20-3 at 2].) As Defendant correctly notes, Plaintiff does not address whether he meets these requirements or whether he has contacted the SSA, as requested, to confirm his eligibility for benefits.

2

As to the nature of the claim, Plaintiff identifies his claim as one of "Identity Theft," and he contends that he has "reviewed the amounts of monthly benefits from [his] itemized [earnings] statement and concluded that a claims representative has clearly misused or stolen [his] identity." (Compl. at 6.) The basis for his claim of "identity theft" is unclear; it appears that Plaintiff's only basis for alleging identity theft is that his former attorney and the SSA told him that money is being released from his Social Security account as an award of benefits. (Id.)[5]  Plaintiff also points to an earnings statement showing monthly benefit amounts for retirement, including what appears to be a calculation of potential retirement benefits, reduced to show the benefit amount if he began taking retirement benefits in June 2033, 59 months prior to his full retirement age. (Compl. at 8.) Nothing about these filings reflects any type of identity theft.

Plaintiff also appears to base his claims of fraudulent activity and negligence in part on his communication with Congressman Mark Walker, whose office Plaintiff contacted in 2019 for help regarding his disability benefits. In a letter dated September 18, 2019, Congressman Walker quoted a response from the Greensboro SSA office which provided as follows:

> Your claim filed on 09/18/06 has been reviewed. You stated you were disabled as of 09/07/05. Unfortunately, we cannot see an estimate of what your monthly benefit was when that claim was filed. If you were given a written estimate stating $1500, we can review that.

---

[5] On the next page of his Complaint, Plaintiff accuses his attorney of "conspir[ing] with The Alamance County Child Support [sic] to purposefully deceive me about receiving my benefits and forward[ing] benefits to the Alamance Child Support Agency without [Plaintiff's] knowledge," in what Plaintiff contends were "blatant criminal acts." (Compl. at 7.) In short, Plaintiff contends that his SSI benefits were impermissibly garnished to satisfy his child support obligations. It is unclear whether Plaintiff presents this argument as an alternative theory regarding his missing benefits or whether it undermines his primary claim of identity theft.

3

(Compl. at 10.) The SSA representative went on to explain that, based on the monthly benefit estimate of $1500 provided to them by Plaintiff, Plaintiff would be entitled to $1054 per month in disability benefits from March 2006 if he were found disabled <u>prior</u> to December 2009, his date last insured for Disability Insurance Benefits ("DIB"). As explained in the letter from Congressman Walker, if Defendant were found to be disabled <u>after</u> the December 2009 Date Last Insured, he would not be entitled to DIB benefits from the SSDI program, and instead would be considered for SSI benefits. (<u>Id.</u>) As the administrative record in this case makes clear, Plaintiff's claims for both DIB and SSI, filed on September 18, 2006, were denied in a March 8, 2010 hearing decision, which Plaintiff did not appeal. (Tr. at 105-21, 1177, 1224-40.) Therefore, there is no evidence that Plaintiff was entitled to Social Security benefits of any kind from March 2006 through December 2009. The response from Congressman Walker's office merely sets out the benefit amount Plaintiff might have been entitled to <u>if</u> his 2006 claim had been approved, which it was not. In what may be an effort to again raise his 2006 DIB claim, Plaintiff now contends that he would like to appeal his fully favorable 2020 SSI decision "based on the fact that identity theft was committed before the [November 2020] remand hearing." (Compl. at 6.) Specifically, he seeks to "appeal the benefit amount that the claim representative has calculated and the issue of creating a paper trail to cover up the fact that [Plaintiff was] approved for social security disability insurance benefits which voids any claim for SSI." (<u>Id.</u>)

In response, Defendant contends that none of Plaintiff's stated bases for seeking review before this Court fall within the Court's purview as set out in 42 U.S.C. §§ 405(g) and (h). Under § 405(g):

4

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision. . . .

42 U.S.C. § 405(g). Further, § 405(h) provides that "the findings and decision of the Commissioner of Social Security after a hearing" may not be reviewed except as provided in § 405(g), and "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28, United States Code, to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h). In short, judicial review of claims under the Social Security Act is only permitted by commencing a civil action for review of a final decision by the Commissioner.

All of Plaintiff's claims and contentions fall outside of this limited grant of jurisdiction. The Court has reviewed the record to determine whether Plaintiff could be challenging a final decision by the Commissioner to the extent that he contends that his recent, favorable SSI claim should be set aside. However, two factors clearly place this action beyond the Court's jurisdiction. First, Plaintiff asks the Court to vacate his award of benefits in favor of his 2006 DIB claim, which he believes was also favorable. As noted above, the decision on his DIB claim was not favorable, and was instead denied on March 8, 2010, and Plaintiff did not appeal that denial. (Tr. at 105-21, 1177, 1224-40.) To the extent Plaintiff may be attempting to challenge that 2010 decision, that decision was made more than 11 years before Plaintiff filed the present action and was never timely appealed. As such, any challenge to the 2010 decision denying Plaintiff's DIB claim is well outside the time limits set forth in the statutes and regulations. See 42 U.S.C. § 405(g) (providing that a civil action seeking review of an administrative decision must be "commenced within sixty days after the mailing to him of

5

Case 1:21-cv-00321-NCT-JEP   Document 24   Filed 09/08/22   Page 5 of 7

notice of such decision."). Second, Plaintiff clearly identifies "theft" of his benefits, rather than a challenge to the agency's decision-making process regarding either of his claims, as the legal basis for his civil action. (See also Pl.'s Mot. For Summary Judgment [Doc. #15] at 7) ("Plaintiff isn't asking for a new hearing[.] [It's] fact by law that plaintiff is disabled. This is about corruption in Social Security from people who swore an oath to uphold the law."). Because this cause does not involve review of a final decision by the Commissioner, as required under sections 405(g) and (h), it is beyond the jurisdiction of this Court.[6]

The Court has also considered whether Plaintiff's *pro se* Complaint could reasonably be read as asserting some other request for relief, particularly in light of the Fourth Circuit's decision in Evans v. Commissioner of Social Security, 670 F. App'x 156 (4th Cir. 2016). In Evans, a *pro se* plaintiff sought "appropriate relief based on the SSA's refusal to respond to his administrative appeal of the denial of his request for disability benefits." Id. Evans admittedly had not proceeded beyond the reconsideration stage within the SSA, and the Fourth Circuit noted that the district court was correct to dismiss any challenge to the merits of the SSA's disability determination for lack of subject matter jurisdiction. However, the Fourth Circuit remanded to the district court because, liberally construed, the pleadings "raised the possibility that [Evans] sought relief in the form of a writ of mandamus." Id. at 156-57. The Court

---

[6] Sovereign immunity bars Plaintiff's request for relief against the United States or representatives thereof, and "[u]nless Congress has consented to a cause of action against the United States, there is no jurisdiction in any court to entertain such a suit." Jarrett v. United States, 874 F.2d 201, 203 (4th Cir. 1989) (holding that sovereign immunity barred a claim against the Social Security Commissioner for monetary damages based on the Commissioner's decision with respect to the receipt of social security benefits, other than as specifically provided in 42 U.S.C. § 405(g)). Defendant also correctly notes that Plaintiff appears to have brought an unsuccessful administrative claim under the Federal Torts Claims Act (FTCA). (See Amendment [Doc. #16-5].) To the extent Plaintiff now attempts to lodge an FTCA claim in the present action, the Court reiterates the Fourth Circuit's holding in Jarrett, which found that "the language of § 405(h) is unambiguous and precludes" FTCA actions in any "claims arising under the Social Security Act." Jarrett, 874 F.2d at 204.

6

further noted that "although Evans failed to exhaust administrative remedies, courts maintain jurisdiction over requests for a writ of mandamus if the plaintiff establishes that 'the administrative process normally available is not accessible' because the agency fails or refuses to act." Id. at 157 (quoting U.S. ex rel. Rahman v. Oncology Assoc., P.C., 198 F.3d 502, 515 (4th Cir. 1999)).

In this case, however, Plaintiff has not alleged that the SSA is refusing to respond to his requests or that the SSA is refusing to act. Plaintiff's claims are unclear, but there is no specific request for this Court to require the SSA to act in his case in what could be a request for a writ of mandamus. Therefore, the Court will recommend that this case be dismissed, but without prejudice to Plaintiff either filing (1) a new complaint seeking review of a final decision of the Commissioner, or (2) a request for a writ of mandamus if he contends and alleges that the SSA is refusing to act or proceed in his case in a way that precludes him from using the administrative process.

IT IS THEREFORE RECOMMENDED that Plaintiff's Motion for Summary Judgment [Doc. #15] be DENIED, that Defendant's Motion to Dismiss [Doc. #19] be GRANTED, and that this action be DISMISSED without prejudice to Plaintiff filing a new complaint seeking review of a final decision of the Commissioner, or filing a new complaint requesting a writ of mandamus if he contends that the agency is refusing to act or proceed in his case in a way that precludes him from using the administrative process.

This, the 8th day of September, 2022.

                                      /s/ Joi Elizabeth Peake
                                      United States Magistrate Judge